# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LAURIE PEABODY,** | : | **Case No. 2:10-cv-1078** |
| **c/o Gerhardstein & Branch** | : | |
| **432 Walnut Street, Suite 400** | : | **Judge** |
| **Cincinnati, OH 45202,** | : | |
| ***Individually and as guardian of*** | : | |
| ***Matthew Thomas Hook,*** | : | |
| | : | |
| **and** | : | **CIVIL COMPLAINT AND JURY** |
| | : | **DEMAND** |
| **THOMAS HOOK,** | : | |
| **c/o Gerhardstein & Branch** | : | |
| **432 Walnut Street, Suite 400** | : | |
| **Cincinnati, OH 45202,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **C.H.[1]** | : | |
| **c/o Gerhardstein & Branch** | : | |
| **432 Walnut Street, Suite 400** | : | |
| **Cincinnati, OH 45202,** | : | |
| ***A minor, by and through her mother*** | : | |
| ***and next friend, S.R.,*** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **PERRY TOWNSHIP, OHIO AND** | : | |
| **THE PERRY TOWNSHIP BOARD** | : | |
| **OF TRUSTEES** | : | |
| **7125 Sawmill Road** | : | |
| **Dublin, OH 43016,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **SHAWN BEAN** | : | |
| **Perry Township Police Department** | : | |
| **7125 Sawmill Road** | : | |
| **Dublin, OH 43016,** | : | |
| ***Individually and in his Official Capacity*** | : | |

---

[1] The minor plaintiff and her mother are identified only by initials to protect their privacy. Counsel will share their identities pursuant to any appropriate protective order.

*as an employee of Perry Township*,    **:**
                                     **:**
          **Defendants.**        **:**

## I. PRELIMINARY STATEMENT

1. Deadly force should not be used against people fleeing from property crimes.  This legal principle has been established by the United States Supreme Court in 1985.  This case challenges the use of deadly force on August 8, 2010, against Matthew Hook who was pursued by police for alleged theft crimes.  Mr. Hook was attempting to escape on foot from Perry Township officers.  He scaled an eight foot fence and, as he was perched at the top, Defendant Shawn Bean discharged his taser striking Mr. Hook in the back.  The taser caused Mr. Hook to plummet head first to the concrete below on the other side of the fence.  Mr. Hook suffered severe brain injuries and will likely be disabled for life.  Mr. Hook was unarmed, had done nothing to threaten Officer Bean and he posed no danger to the officer or the public when he was tased atop the fence.

2. This severe injury was foreseeable and preventable by Defendants.  Prior to the tasing of Mr. Hook, the Sixth Circuit Court of Appeals held that a taser "inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Kijowski v. City of* Niles, 2010 WL 138601 *5 (6th Cir. 2010.)  Manufacturer Taser International specifically warns that "death or serious injury" can result if deployed against "a person who… is on an elevated… surface...."

3. The tasing of Mr. Hook was captured on video and a copy of that video is attached to this complaint.  Plaintiff, his mother and guardian, his father and child bring this case seeking fair compensation and seeking to reform the policies and training within the Perry Township

Police Department to insure that tasers are only deployed consistent with constitutional limits on use of force.

## II. PARTIES

4. Plaintiff Matthew Thomas Hook is and was at all relevant times a resident of the State of Ohio and this judicial district. Due to brain injuries he has been declared incompetent by the Probate Court of Franklin County (*In re Matthew Thomas Hook*, Case No. 543455). His mother, Laurie Peabody, has been appointed as his guardian. He brings this action through his guardian, Laurie Peabody.

5. Laurie Peabody is and was at all relevant times a resident of the State of Ohio and of this judicial district. She brings this action individually as the mother and as guardian of Matthew Thomas Hook, who is her adult incompetent son.

6. Plaintiff Thomas Hook is a resident of the State of Ohio and of this judicial district. He is the father of Matthew Hook.

7. Plaintiff C.H. is and was at all relevant times a resident of the State of Ohio and of this judicial district. She is the minor child of Matthew Hook and brings this action through her mother and best friend, S.R.

8. Perry Township Ohio is a unit of local government organized under the laws of the State of Ohio and is sued through the Perry Township Board of Trustees who are named only in their official capacity pursuant to O.R.C. § 503.01. Defendant Perry Township is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

9. Defendant Shawn Bean was at all times relevant to this action a police officer employed by Perry Township. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is both sued in his individual and official capacity.

## III. FACTS

**A. Matthew Thomas Hook**

10. Matthew Thomas Hook was a former high school athlete.  He is "Dad" to a two-year-old daughter, C.M.

11. During C.M.'s first year of life Matthew was a primary caregiver to his daughter, living with her and her mother and providing for her daily needs.  His goal has been to provide a life full of opportunity for his daughter.

12. Matthew Hook has struggled with drug addiction for several years.  He has been through rehabilitation programs and, like many addicts, relapsed from time to time after treatment.

13. Matthew's parents, Laurie Peabody and Thomas Hook, have been as supportive as possible through Matthew's struggle with addiction.

14. Matthew would occasionally steal property in order to secure funds and buy drugs.  He admitted his guilt and served his sentence.  He was not violent and never carried a weapon.

15. Thomas Hook is Matthew's father.  A former addict himself, Thomas assisted his son as best he could and was confident that with repeated treatment efforts and family support his son would also become sober and drug free.

**B. Deadly Force Used to Arrest Matthew Hook for Property Crimes**

16. At approximately 11:00 a.m. on August 8, 2010, Perry Township Police officers were notified that an individual driving a white Ford Explorer was wanted for a theft crime and was thought to be in Perry Township.

17. Mr. Hook was driving a white Ford Explorer that was spotted by Perry Township police officer, Sergeant Ed Kontul, shortly thereafter.

18. Sergeant Kontul activated his lights and siren to stop Mr. Hook.

4

19. Mr. Hook led Sergeant Kontul on a short chase ending in a nearby parking lot.

20. Another Perry Township police officer, Officer Shawn Bean, observed Mr. Hook entering the parking lot and pulling his vehicle to the rear of a Dick's Sporting Goods store.

21. The back side of the Dick's Sporting Goods store is near a loading dock and is enclosed by an 8' fence.

22. When Officer Bean arrived at Mr. Hook's position, Mr. Hook was out of his vehicle and trying to flee on foot.

23. Mr. Hook then stepped up on the hood of the Explorer to help him scale the fence.

24.  Officer Bean was out of his vehicle and running toward Mr. Hook at this time.

25. At no time had Mr. Hook made any threatening gestures, possessed or displayed a weapon, or posed any physical threat in any manner to Officer Bean or any other person.

26. Despite the fact that he was unarmed and posed no reasonable threat to the officer or the public, Officer Bean stopped Mr. Hook by deploying his taser device in "probe mode" when Mr. Hook was at the top of this eight-foot-tall section of fence.

27. "Probe mode" is a function of the taser device whereby two barbs are deployed from a distance of up to 25 feet and a continuous electric shock is administered to the suspect through the barbs.

28. The taser worked as intended.  The electrical shock paralyzed Mr. Hook's muscles.  Unable to control his movements, Mr. Hook plummeted, head-first, to the other side of the fence.

29. Mr. Hook suffered severe brain injuries as a result of this fall.

30. Immediately after the incident, Officer Bean remarked to other officers that arrived on the scene that he was not sure if Mr. Hook was "going to make it."

31. Immediately after the incident, Officer Bean explained what happened to another officer by stating: "When I tased him, of course he locked up, and he just fell ... forward, instead of falling straight down or back."

32. This incident was captured on Officer Bean's cruiser cam video.  The relevant portion of that cruiser cam video is attached to this complaint.

33. The Perry Township Police Department policies define deadly force as "any force that carries a substantial risk that it will proximately result in . . . serious physical harm," which specifically includes "any physical harm which carries a substantial risk of death," "any physical harm which involves some permanent incapacity, whether partial or total or which involves some temporary, substantial incapacity," and "any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement."

34. At no time was Mr. Hook accused of or suspected of a serious crime that merited use of deadly force.  Nor did he act at any time in a manner that merited the use of deadly force.

**C.  Policies, Customs, and Culpable Conduct**

35. At all times relevant to this action Defendant Bean acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the safety of Matthew Thomas Hook.

36. The use of force by Defendant Bean on August 8, 2010, violated clearly established law.

37. At the time of this use of force, the Perry Township Police Department Use of Force Policy and related training materials authorized use of the taser to stop persons fleeing even though the persons are suspected only of nonviolent property crimes.  This policy and training by the Defendant Perry Township violated clearly established law which required an officer choosing to use force to balance the government interest in seizing a nonviolent, unarmed

person fleeing from arrest for a property crime against the intrusion on the citizen, including the likelihood of serious injury to the citizen.

38. At the time of the use of force in this case, Taser International, the company that manufactures the taser, had issued a product warning, known to all users, including Defendants, indicating that the device can cause "death or serious injury" if used on an individual standing on an elevated surface.

39. Law enforcement agencies and other organizations in the United States and elsewhere who have studied tasers have recommended that the device not be used against nonviolent persons suspected of minor crimes who are on elevated surfaces. Defendants have ignored these findings and recommendations.

40. A subsequent use of force investigation by Perry Township Police Department found that Officer Bean's use of force was proper despite the fact that Mr. Hook was a nonviolent, unarmed individual wanted only for a property crime.

41. Defendant Perry Township's policies, customs, and practices regarding the deployment of tasers against nonviolent persons suspected only of property crimes was a moving force behind the excessive force used on Mr. Hook by Defendant Bean in this case.

42. Defendant Perry Township's failure to train and supervise its officers regarding the proper deployment of tasers against nonviolent persons suspected only of property crimes was a moving force behind the excessive force used on Mr. Hook by Defendant Bean in this case. The taser training and supervision was deliberately indifferent to the safety needs of citizens that the Perry Township police would likely encounter, such as Matthew Thomas Hook who was suspected only of a nonviolent property crime.

43. Subsequent to the tasing that severely injured Mr. Hook, Defendant Perry Township ratified Officer Bean's use of force and concluded incorrectly that Defendant Bean had acted reasonably in this case.  In ratifying the conduct of Defendant Bean, Perry Township acted consistently with its policies, customs, and usages with respect to taser deployment.

**D. Harm to Matthew Hook and His Family**

44. Mr. Hook suffered serious and permanent brain damage that has required multiple surgeries and, as of the filing of this complaint, Mr. Hook remains incompetent, severely disabled and hospitalized.  The use of force by Officer Bean caused severe pain, physical injuries, humiliation, embarrassment and emotional distress.  Defendants' actions described above directly and proximately caused these injuries to Mr. Hook.

45. Plaintiffs Laurie Peabody, Thomas Hook, and C.M. have suffered a loss of services, society, companionship, affection, comfort, love, guidance, solace, and counsel due to the injury Officer Bean inflicted on Mr. Hook.  Parents Laurie Peabody and Thomas Hook have attended to their son's needs at his bedside since he became hospitalized and are doing everything they can possibly do to help their son recover his physical and mental functions. These losses to the parents and daughter are the direct and proximate result of Defendants' actions.

## IV. FIRST CAUSE OF ACTION – CLAIM FOR EXCESSIVE FORCE (42 U.S.C. §1983)

46. Defendants have, under color of law, deprived Matthew Hook of rights, privileges, and immunities secured to him by the United States Constitution including the prohibition on unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution.

## V. SECOND CAUSE OF ACTION – ASSAULT AND BATTERY

47. The Defendants intentionally and maliciously applied and threatened to apply unlawful and

unnecessary force against the Matthew Hook.

## VI. THIRD CAUSE OF ACTION – LOSS OF CONSORTIUM

48. As a proximate result of the wrongful acts of the Defendants, Plaintiffs Laurie Peabody,

Thomas Hook and C.M. have suffered, and will continue to suffer in the future, loss of

consortium, including the loss of services, society, companionship, affection, comfort, love,

guidance, solace, and counsel.

## VII. JURY DEMAND

49. Plaintiffs request a jury trial on all claims triable to a jury.

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court award them:

A.  Compensatory damages in an amount to be shown at trial;

B.  Punitive damages against Defendant Bean only in an amount to be shown at trial (no

punitive damages are sought against Perry Township);

C.  Costs incurred in this action and reasonable attorney fees under 42 U.S.C. §1988;

D.  Prejudgment interest; and

E.  Such other and further relief as this Court may deem just and proper.

Respectfully submitted,


/s/ Alphonse A. Gerhardstein                    William W. Lamkin
Alphonse A. Gerhardstein (0032053)     Tim Van Eman
Trial Attorney for Plaintiffs                    Lamkin, Van Eman, Trimble, Beals &
Jennifer L. Branch (0038893)               Dougherty, LLC
Attorney for Plaintiffs                          Attorney for Plaintiffs
Gerhardstein & Branch Co. LPA            Suite 200
432 Walnut Street, Suite 400               500 South Front Street

Cincinnati, Ohio 45202          Columbus, OH  43215
Tel (513) 621-9100              Tel (614) 224-8187
Fax (513) 345-5543             Fax (614) 224-4943
agerhardstein@gbfirm.com
jbranch@gbfirm.com