IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Laurie Peabody, *et al.*, | : | |
| Plaintiffs | : | Civil Action 2:10-cv-01078 |
| v. | : | Judge Sargus |
| Perry Township, Ohio, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

# Order

This matter is before the Magistrate Judge on plaintiffs Laurie Peabody, Thomas Hook, and C. H.'s January 25, 2012 motion to utilize rebuttal expert (doc. 35) and defendants Shawn Bean, Perry Township, and Perry Township Board of Trustees' February 9, 2012 joint motion to exclude the testimony of plaintiff's rebuttal liability expert witness Ron Martinelli (doc. 38).

Arguments of the Parties. Defendants move to exclude the proposed rebuttal report and testimony of Ron Martinelli, Ph.D. Defendants argue that Dr. Martinelli's report is not in response to any new or unanticipated opinions in the report of their responsive expert. Defendants maintain that the report does not offer true rebuttal expert testimony within the meaning of Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure. According to defendants, rebuttal expert testimony must be limited to the same subject matter identified by the other party. Defendants maintain that plaintiffs

1

are not permitted to bring forth rebuttal expert testimony to rebuttal expert testimony. Defendants' responsive expert was retained to rebut the testimony of plaintiff's primary expert. Defendants further argue that Dr. Martinelli's expert report is not permitted under Rule 26(a)(2)(D)(ii) because it is not limited to the same subject matter of Mr. Ijames report and it contemplates material that is not new or unanticipated.

<u>Discussion</u>. Michael D. Lyman, Ph.D., plaintiff's primary expert, submitted a report outlining his opinions with respect to the facts of this case. He opined that:

- Under the circumstances known in this case, Officer Bean's deployment of his Taser against Mr. Hook was unnecessary, unreasonable and served no objectively reasonable purpose;

- Perry Township's Taser policy is improperly written and fails to incorporate important training provisions and cautions regarding deployment of the device on persons who might fall and suffer injury;

- Administrators within the Perry Township Police Department ratified Officer Bean's misuse of the Taser by failing to hold him accountable for his use of the device against Mr. Hook.

Steve Ijames, defendants' responsive expert, submitted a report indicating his belief that the force used by Officer Shawn Bean to effect the arrest of Matthew Hook was not unreasonable, but consistent with that of a prudent police officer facing similar circumstances. Mr. Ijames' report noted that Mr. Hook's pants were so loose and baggy that they almost fell to his knees twice and exposed his underwear between frame 20 of

second 34 and frame 10 of second 35. Officer Bean testified that he deployed the Taser as Mr. Hook started to climb the fence, and he might have been four to five feet high on the fence. Officer Bean further testified that after the probe struck Mr. Hook, he continued to climb and did not show any Taser incapacitation effect until he stood on top of the fence. Mr. Ijames visited the scene with Officer Bean and viewed the still frame digital photographs of the dash camera video. Officer Bean believed that he fired the Taser at about frame 28 of second 39, at which point Mr. Hook was on the fence with his right leg hanging down approximately 18 inches above the hood of the SUV. Mr. Ijames noted that during Bean's deposition, he testified that the Taser took effect later than he intended. Mr. Ijames opined that Mr. Hook's pants were so loose and baggy that they caused a "commonly observed spatial probe malfunction, which involves one of the probes not penetrating the skin but instead hanging in the clothing, which due to loft keeps the probe from coming in close contact with the flesh to complete the circuit." Doc. 38-3 at 4; PAGEID #199. Mr. Ijames believes that the circuit was completed at the time Mr. Hook stood up on the fence and that the Taser did not perform as expected and intended by Officer Bean because of a spatial probe malfunction.

Following the submission of Mr. Ijames' report, plaintiffs retained Ron Martinelli, Ph.D. to rebut the opinions put forth by Mr. Ijames. Dr. Martinelli reviewed the media evidence to determine the point where the officer fired his Taser. He also attempted to determine whether or not Mr. Hook was wearing loose fitting clothing and

3

whether or not any probes struck him where his clothing was loose. Dr. Martinelli also attempted to identify forensic evidence to demonstrate Mr. Hook's physical position at the time Officer Bean fired his Taser.

Dr. Martinelli's attempts to enhance the video were unsuccessful, and the quality of the video was too grainy to be able to identify whether Mr. Hook's clothing was sufficiently loose fitting as to obstruct the Taser's probe from instantaneously delivering electrical current to the plaintiff. Dr. Martinelli believed that Officer Bean fired his Taser when Mr. Hook was already on a dangerous, elevated position. This opinion is based on the fact that the video time stamp 00:38:00, Mr. Hoot is reaching up for the top of the wooden fence while Officer Bean is still approaching with his hands pumping in a normal running motion. At video time stamp 00:39:10, Officer Bean is still behind the left rear bumper of the SUV, and from this point forward, Hook was at a dangerously elevated position on the fence. Dr. Martinelli also stated that there was no forensic evidence to support that loose clothing obstructed or impaired to the Taser's ability to conduct electrical load into Mr. Hook's body:

> The metal, barber tipped probes of the TASER® are expelled from its firing cartridge chambers by exploded nitrogen with sufficient gaseous force to produce a velocity equal to approximately 180 feet per second. This force is specifically designed to allow the probe(s) barbs to penetrate through clothing and into skin so that the probes connected to the TASER® by thin wires can transfer electrical "load" through a gap of up to two inches of clothing and into the skin. Much of the TASER®'s 50,000 volt output is dissipated in order to create an electrical "arc" and to bridge gaps in clothing to influence the subject with approximately 1,000-1,4000 volts of electricity. . . .

4

> The biomechanics of [Mr. Hook's] movements would have caused the [loose] clothing that he was attired in and any probes affixed to that clothing to move closer to his body.

Doc. 38-4 at 15-16; PAGEID #238-39. Dr. Martinelli believed that Officer Bean's statements concerning the point at which he fired his Taser cannot be reconciled with the dashcam video and that the opinion of defendants' expert is merely theoretical and not forensically based.

Here, the proffered evidence is directly responsive to the defense theory presented by Mr Ijames. Mr. Ijames examined the video in the presence of Officer Bean. Dr. Martinelli also examined the video frame by frame to rebut Officer Bean's version of events. Mr. Ijames opined that Mr. Hook's loose clothing was responsible for delaying the effect of the Taser, but Dr. Martinelli disputed this opinion based on the mechanics of how a Taser functions. Although plaintiffs were aware that Officer Bean maintains that he discharged his Taser before Mr. Hook was at a dangerously elevated position on the fence, plaintiffs were not required to anticipate and refute any and all theories as to possible causes of the Taser's malfunction. Defendants' expert has presented his opinion as to how and why the Taser malfunctioned, and plaintiffs are entitled to present expert testimony rebutting that testimony.

Conclusion. For the reasons stated above, plaintiffs' January 25, 2012 motion to utilize rebuttal expert (doc. 35) is GRANTED and defendants' February 9, 2012 joint motion of defendants Shawn Bean, Perry Township, and Perry Township Board of

5

Trustees to exclude the testimony of plaintiff's rebuttal liability expert witness Ron Martinelli (doc. 38) is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/ Mark R. Abel
United States Magistrate Judge