IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Laurie Peabody, *et al.*, | : | |
| Plaintiffs | : | Civil Action 2:10-cv-01078 |
| v. | : | Judge Sargus |
| Perry Township, Ohio, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

## Order

This matter is before the Court on defendants Shawn Bean, Perry Township, and

Perry Township Board of Trustees' October 2, 2012 objections to the Magistrate Judge's

September 21, 2012 Order (doc. 68). Defendants seek to exclude the proposed rebuttal

report and testimony of Ron Martinelli, Ph.D. Defendants argue that the report is not in

response to any new or unanticipated opinions in the report of their responsive expert

and that it does not offer true rebuttal expert testimony within the meaning of Rule

26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure.

**I.     Background**

The Magistrate Judge summarized the reports prepared by the expert witnesses

in this case as follows:

>     Michael D. Lyman, Ph.D., plaintiff's primary expert, submitted a
> report outlining his opinions with respect to the facts of this case. He
> opined that:

- Under the circumstances known in this case, Officer Bean's deployment of his Taser against Mr. Hook was unnecessary, unreasonable and served no objectively reasonable purpose;
- Perry Township's Taser policy is improperly written and fails to incorporate important training provisions and cautions regarding deployment of the device on persons who might fall and suffer injury;
- Administrators within the Perry Township Police Department ratified Officer Bean's misuse of the Taser by failing to hold him accountable for his use of the device against Mr. Hook.

Steve Ijames, defendants' responsive expert, submitted a report indicating his belief that the force used by Officer Shawn Bean to effect the arrest of Matthew Hook was not unreasonable, but consistent with that of a prudent police officer facing similar circumstances. Mr. Ijames' report noted that Mr. Hook's pants were so loose and baggy that they almost fell to his knees twice and exposed his underwear between frame 20 of second 34 and frame 10 of second 35. Officer Bean testified that he deployed the Taser as Mr. Hook started to climb the fence, and he might have been four to five feet high on the fence. Officer Bean further testified that after the probe struck Mr. Hook, he continued to climb and did not show any Taser incapacitation effect until he stood on top of the fence. Mr. Ijames visited the scene with Officer Bean and viewed the still frame digital photographs of the dash camera video. Officer Bean believed that he fired the Taser at about frame 28 of second 39, at which point Mr. Hook was on the fence with his right leg hanging down approximately 18 inches above the hood of the SUV. Mr. Ijames noted that during Bean's deposition, he testified that the Taser took effect later than he intended. Mr. Ijames opined that Mr. Hook's pants were so loose and baggy that they caused a "commonly observed spatial probe malfunction, which involves one of the probes not penetrating the skin but instead hanging in the clothing, which due to loft keeps the probe from coming in close contact with the flesh to complete the circuit." Doc. 38-3 at 4; PAGEID #199. Mr. Ijames believes that the circuit was completed at the time Mr. Hook stood up on the fence and that the Taser did not perform as expected and intended by Officer Bean because of a spatial probe malfunction.

Following the submission of Mr. Ijames' report, plaintiffs retained Ron Martinelli, Ph.D. to rebut the opinions put forth by Mr. Ijames. Dr. Martinelli reviewed the media evidence to determine the point where the officer fired his Taser. He also attempted to determine whether or not Mr. Hook was wearing loose fitting clothing and whether or not any probes struck him where his clothing was loose. Dr. Martinelli also attempted to

2

identify forensic evidence to demonstrate Mr. Hook's physical position at the time Officer Bean fired his Taser.

Dr. Martinelli's attempts to enhance the video were unsuccessful, and the quality of the video was too grainy to be able to identify whether Mr. Hook's clothing was sufficiently loose fitting as to obstruct the Taser's probe from instantaneously delivering electrical current to the plaintiff. Dr. Martinelli believed that Officer Bean fired his Taser when Mr. Hook was already on a dangerous, elevated position. This opinion is based on the fact that the video time stamp 00:38:00, Mr. Hoot is reaching up for the top of the wooden fence while Officer Bean is still approaching with his hands pumping in a normal running motion. At video time stamp 00:39:10, Officer Bean is still behind the left rear bumper of the SUV, and from this point forward, Hook was at a dangerously elevated position on the fence. Dr. Martinelli also stated that there was no forensic evidence to support that loose clothing obstructed or impaired to the Taser's ability to conduct electrical load into Mr. Hook's body:

> The metal, barber tipped probes of the TASER® are expelled from its firing cartridge chambers by exploded nitrogen with sufficient gaseous force to produce a velocity equal to approximately 180 feet per second. This force is specifically designed to allow the probe(s) barbs to penetrate through clothing and into skin so that the probes connected to the TASER® by thin wires can transfer electrical "load" through a gap of up to two inches of clothing and into the skin. Much of the TASER®'s 50,000 volt output is dissipated in order to create an electrical "arc" and to bridge gaps in clothing to influence the subject with approximately 1,000-1,4000 volts of electricity. . . .
>
> The biomechanics of [Mr. Hook's] movements would have caused the [loose] clothing that he was attired in and any probes affixed to that clothing to move closer to his body.

Doc. 38-4 at 15-16; PAGEID #238-39. Dr. Martinelli believed that Officer Bean's statements concerning the point at which he fired his Taser cannot be reconciled with the dashcam video and that the opinion of defendants' expert is merely theoretical and not forensically based.

Doc. 66 at PageID 1507-1510.

## II. Arguments of the Parties

### A. Defendants Shawn Bean, Perry Township and Perry Township Board of Trustees

Defendants contend that Dr. Martinelli's report is not limited to the same subject matter of defendants expert from Mr. Ijames. Dr. Martinelli opined that the Perry Township Police Department did not follow protocols for collecting forensic evidence, but Mr. Ijames did not rely on forensic evidence to support the finding of the existence of a spatial probe malfunction. Mr. Ijames relied on the testimony of Officer Bean, who reported that there was a delay between the time he deployed the probes and the time plaintiff showed the effects of the Taser. Because Mr. Ijames never rendered an opinion on whether the police department followed proper protocol in collecting forensic evidence, Dr. Martinelli's report is clearly not rebuttal evidence. Defendants maintain that plaintiffs are attempting to introduce new evidence by claiming it constitutes rebuttal evidence.

Defendants argue that Dr. Martinelli's report and testimony are not proper rebuttal evidence because they contemplate material that is not new or unanticipated. The so-called enhanced video relied upon by Dr. Martinelli does not provide any new information that was not already readily available. Plaintiffs seem to allege that any issues regarding delay were new because the specific term "spatial probe malfunction" had not been previously used, but the issue of delay had been discussed extensively in the depositions of Officer Bean and Mr. Lyman's depositions.

4

Defendants further argues that Dr. Martinelli's report is redundant and an attempt to bolster evidence already submitted by Mr. Lyman.

### B.    Plaintiff Laurie Peabody

Plaintiffs argue that each of Dr. Martinelli's conclusions is connected to the spatial probe malfunction. Dr. Martinelli relied on all of the available forensic evidence and a frame-by-frame analysis of an enhanced video of the cruiser camera that captured the incident. This analysis allowed Dr. Martinelli to determine that there was no forensic evidence that could establish a spatial probe malfunction. Instead, the forensic evidence suggested that Mr. Hook was immediately impacted by the Taser, contary to Mr. Ijames' theory that a spatial probe malfunction delayed the effect of the Taser. Dr. Martinelli's opinion concerning the Perry Township's lack of protocols in place to collect the forensic evidence demonstrates that it is impossible to conclusively determine, as Mr. Ijames purports to do, when the taser trigger was pulled.

Plaintiffs maintain that Dr. Martinell's report contemplates material that was new and unanticipated. According to plaintiffs, Officer Bean's testimony showed that he was unsure of when he tased Mr. Hook. At one point, Officer Bean testified that it was possible that he tased Mr. Hook while he was on the top of the fence. Plaintiffs also contend that Officer Bean's testimony was inconsistent with multiple contemporaneous statements he made after the event. No where in these contemporary statements did Officer Bean indicate that there was potential delay in the Taser taking effect. The internal affairs investigation made no reference to a potential spatial probe malfunction.

5

Plaintiffs argue that they were not required to anticipate and refute any and all theories to the possible causes of the alleged delayed function. Officer Bean's statements in no way indicated that defendants intended to specifically advance a spatial probe malfunction theory.

### III.    Discussion

Under the provisions of 28 U.S.C. §636(b)(1)(A), this Court shall set aside any part of the Magistrate Judge's Order found to be clearly erroneous or contrary to law.

The Magistrate Judge properly concluded that the proffered evidence is directly responsive to the defense theory presented by Mr Ijames. Mr. Ijames examined the video in the presence of Officer Bean. To rebut Officer Bean's version of events, Dr. Martinelli also examined the video frame by frame. Mr. Ijames opined that Mr. Hook's loose clothing was responsible for delaying the effect of the Taser, but Dr. Martinelli disputed this opinion based on the mechanics of how a Taser functions. Dr. Martinelli also noted that the video was too grainy to determine whether Mr. Hook's clothing was so loose fitting that the probe was obstructed. Although plaintiffs were aware that Officer Bean maintains that he discharged his Taser before Mr. Hook was at a dangerously elevated position on the fence, plaintiffs were not required to anticipate and refute any and all theories as to possible causes of the Taser's malfunction. Defendants' expert has presented his opinion as to how and why the Taser malfunctioned, and plaintiffs are entitled to present expert testimony rebutting that testimony. Dr. Martinelli's opinion concerning the apparent lack of protocols for

collecting forensic evidence following the use of a Taser is also proper rebuttal evidence. Plaintiffs are entitled to demonstrate that there is no forensic evidence supporting the theory put forth by Dr. Ijames because the apparent lack of forensic evidence makes it impossible to conclusively determine when the Taser was discharged. Dr. Ijames based his opinion as to when the Taser was discharged based on the testimony of Officer Bean. Dr. Martinelli seeks to demonstrate that his testimony is not supported by forensic evidence.

## IV.    Conclusion

For the reasons stated above, defendants Shawn Bean, Perry Township, and Perry Township Board of Trustees' October 2, 2012 objections to the Magistrate Judge's September 21, 2012 Order (doc. 68) are **OVERRULED**.


1-15-2013
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT COURT**